**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAs) PRODUCTS LIABILITY LITIGATION**<br><br>BARBARA A. BUDNACK,<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY and LILLY USA, LLC,<br><br>Defendants. | **MDL NO. 3094**<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON<br><br>**COMPLAINT AND JURY DEMAND**<br><br>CIVIL ACTION NO.: ________________ |

**SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff named below, by and through the undersigned counsel, files this **Short-Form Complaint and Demand for Jury Trial** against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in **Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")**, and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this **Short-Form Complaint** as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

**IDENTIFICATION OF PARTIES**

**Plaintiff(s)**

1. Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): **Barbara A. Budnack.**

2. If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: **Not applicable.**

3. If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): **Not applicable.**

4. If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: **Not applicable.**

**Defendant(s)**

5. Plaintiff is suing the following Defendant(s) (check all that apply):
   _____ Novo Nordisk Inc.
   _____ Novo Nordisk A/S
   __X__ Eli Lilly and Company
   __X__ Lilly USA, LLC
   _____ other(s) (identify): ________________________________________

**JURISDICTION AND VENUE**

6. City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence): **Holland, New York.**

7. State where Plaintiff/Decedent was prescribed the GLP-1 RA Product(s) at issue: **New York.**

8. State of Plaintiff's/Decedent's residence at time of their use of the GLP-1 RA Product(s) at issue: **New York.**

9. City and state of Plaintiff's/Decedent's residence at time of diagnosis of injury: **Holland, New York.**

10. Jurisdiction is based on:
   __X__ diversity of citizenship pursuant to 28 U.S.C. § 1332
   _____ other (plead in sufficient detail as required by applicable rules):
   _______________

11. The District Court(s) where Plaintiff might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered: **United States District Court for the Western District of New York.**

12. Venue is proper in the District Court identified in Paragraph 11 because:
   __X__ a substantial part of the events and omissions giving rise to Plaintiff's claims occurred there
   _____ other (plead in sufficient detail as required by applicable rules):
   _______________

13. If applicable, identify the citizenship of any additional Defendant(s) named above: **Not applicable.**

**PRODUCT USE**

14. Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):
   _____ Ozempic (semaglutide)
   _____ Wegovy (semaglutide)

______ Rybelsus (oral semaglutide)
______ Victoza (liraglutide)
______ Saxenda (liraglutide)
__X__ Trulicity (dulaglutide)
______ Mounjaro (tirzepatide)
______ Zepbound (tirzepatide)
______ Other(s) (specify): ________________________________________

15. To the best of Plaintiff's knowledge, Plaintiff/Decedent used GLP-1 RA Product(s) during the following approximate date range(s): **Trulicity (dulaglutide): approximately July 2017 through approximately March 2024.**

**INJURIES AND DAMAGES**

16. To the best of Plaintiff's knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

__X__ Gastroparesis
__X__ Other gastro-intestinal injuries (specify) **delayed gastric emptying with severe constipation and obstipation, persistent nausea, recurrent vomiting, abdominal pain and distention, bloating, early satiety, and unintended weight loss, and the sequelae thereof.**
______ Ileus
______ Ischemic Bowel/Ischemic Colitis
______ Intestinal Obstruction
______ Necrotizing Pancreatitis
______ Gallbladder Injury (specify) ____________________
______ Micronutrient Deficiency
______ Wernicke's encephalopathy
______ Aspiration
______ Death
______ Additional/Other(s) (specify): ________________________________

17. Plaintiff's/Decedent's injuries occurred in approximately (month and year): **Early 2023 (onset of gastrointestinal symptoms, including emergency department care on March 28, 2023); January 2024 (gastroparesis confirmed by gastric emptying study).**

18. In addition, as a result of Plaintiff's/Decedent's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

__X__ Injury to self
______ Injury to person represented
__X__ Economic loss
______ Wrongful death
______ Survivorship
______ Loss of services

_____ Loss of consortium
_____ other(s) (specify): ________________________________________

**CAUSES OF ACTION**

19. In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

__X__ Count I: Failure to Warn – Negligence
__X__ Count II: Failure to Warn – Strict Liability
__X__ Count III: Breach of Express Warranty/Failure to Conform to Representations
__X__ Count IV: Breach of Implied Warranty
__X__ Count V: Fraudulent Concealment/Fraud by Omission
__X__ Count VI: Fraudulent/Intentional Misrepresentation
_____ Count VII: Negligent Misrepresentation/Marketing
_____ Count VIII: Strict Product Liability Misrepresentation/Marketing
_____ Count IX: Innocent Misrepresentation/Marketing
__X__ Count X: Unfair Trade Practices/Consumer Protection (see below)
__X__ Count XI: Negligence
__X__ Count XII: Negligent Undertaking
_____ Count XIII: State Product Liability Act (see below)
_____ Count XIV: Wrongful Death
_____ Count XV: Loss of Consortium
_____ Count XVI: Survival Action
__X__ Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules): **Counts V and VI: see Attachment "A" (Fraud Supplement). Count X: see Paragraph 20 below and Attachment "B" (New York Consumer Protection Supplement).**

20. If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:

a. Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims: **New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, including § 349(a) and § 349(h); and New York False Advertising Act, N.Y. Gen. Bus. Law §§ 350, 350-a, and 350-e, including § 350-a(1) and § 350-e(3).**

b. Identify the factual allegations supporting those claims (by subsection, if applicable): **See Attachment "B" (New York Consumer Protection Supplement), and the paragraphs of the Master Complaint cited therein, all of which are incorporated herein by reference.**

** Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21. If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above: **Not applicable. Plaintiff is a citizen of New York, which has not enacted a Product Liability Act subsuming product liability claims. See Master Complaint ¶ 906. Plaintiff therefore does not assert a Count XIII claim and instead asserts the individual causes of action checked in Paragraph 19 above.**

** Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22. If pre-suit notice is required by statute, did Plaintiff provide some form of separate pre-suit notice to Defendant(s)? **No. No pre-suit notice is required by statute for the claims asserted herein, including Plaintiff's claims under N.Y. Gen. Bus. Law §§ 349 and 350.**

**RELIEF**

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the Master Complaint, as appropriate, and any additional relief to which Plaintiff may be entitled.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.

Dated: September 24, 2026

Respectfully submitted,

FARR LAW FIRM, P.A.

/s/ George T. Williamson
George T. Williamson,
FL Bar No. 85585
99 Nesbit Street
Punta Gorda, FL 33950
Telephone: (941) 639-1158
Email: gwilliamson@farr.com

*Attorney for Plaintiff*

**ATTACHMENT "A"**
**FRAUD SUPPLEMENT (COUNTS V & VI)**

1. Plaintiff incorporates by reference the factual allegations in the Master Complaint, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), together with paragraphs 45-59 (gastroparesis), 138-142 (regulatory history of Trulicity), 153-224 (Defendants' notice of the association between GLP-1 RAs and gastroparesis), 252-418 (Defendants' marketing and promotion, including off-label promotion), and 419-603 (Defendants' failure to warn and deceptive marketing), as though set forth fully at length herein.

2. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Product (Trulicity (dulaglutide)) used by Plaintiff.

3. At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiff and her prescribing physicians.

4. Defendants knew or should have known that their GLP-1 RA Products, including Trulicity, were unreasonably dangerous and caused gastrointestinal adverse effects, including gastroparesis and persistent delayed gastric emptying, of a greater severity, intensity, frequency, and duration than represented.

5. Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6. Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiff and her prescribing physicians to use and prescribe the GLP-1 RA Products.

7. Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

   a. Risk of Severe Gastrointestinal Injuries: Concealing the true risk of severe, persistent, and debilitating gastrointestinal conditions caused by Trulicity and Defendants' other GLP-1 RA Products, including gastroparesis (delayed gastric emptying) that persists after the drug is discontinued, ileus, and intestinal obstruction.

   b. Inadequate Gastric Emptying Testing: Concealing that Defendants' representations of a "minor" or "mild" delay in gastric emptying were based on inadequate testing (including the acetaminophen absorption test, which measures only the emptying of liquids), and that Defendants knew or should have known that such testing did not reflect the drug's true effect on the emptying of solid food.

   c. Misleading Clinical Trial Data: Concealing that clinical trial participants were frequently treated with anti-emetic medications to manage gastrointestinal side effects, thereby skewing the data and rendering the "mild to moderate" and "transient" side-effect profile reported in Defendants' labeling and marketing materials false and misleading, and

concealing that Defendants performed research, testing, and post-market surveillance in a manner that would lead to under-reporting of the severe gastrointestinal risks of the GLP-1 RA Products.

d. Label Omission: Concealing that, at all relevant times, including when Plaintiff was prescribed and used Trulicity from 2017 through 2024, the Trulicity Prescribing Information stated only that use of the drug "may be associated with gastrointestinal adverse reactions, sometimes severe," without disclosing that these adverse reactions may be symptoms of gastroparesis, which can be persistent, can require emergency care and hospitalization, and can lead to disabling secondary conditions, and that the "Adverse Reactions" section of the Trulicity labeling referred only vaguely to nausea, vomiting, constipation, and abdominal pain while failing to mention gastroparesis, notwithstanding Defendants' knowledge of reasonable evidence of an association between dulaglutide and gastroparesis. See Master Complaint ¶¶ 153-224, 455, 461.

e. "Bogus" Weight-Loss Claims: Concealing that patients are highly likely to regain the weight after discontinuing the drug, that maintaining any weight loss requires lifelong, continuous use of the medication, and that a significant portion of the total weight lost is often lean muscle mass, not fat, which can lead to negative health outcomes.

8. Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a. Defendants made representations in widespread direct-to-consumer advertising for Trulicity, including television commercials and social media, that patients taking Trulicity may lose weight, even though Trulicity has never been approved for weight loss. See Master Complaint ¶¶ 358, 378, 390. In Defendants' 2018 "Do More" Trulicity campaign, a patient exclaims that Trulicity "comes in an easy-to-use pen, and I may even lose a little weight!," and in Defendants' 2021 and 2022 "On His Game," "Father-Son," and "My Sister" Trulicity advertisements, the voiceover represented that taking Trulicity can help patients "lose up to 10lbs." Id. ¶ 358. These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b. Defendants made misrepresentations to the public and to Plaintiff through their Trulicity advertising campaigns and product labeling, which falsely created a misleading impression of the safety profile of Trulicity. While those materials mentioned common gastrointestinal side effects such as nausea, vomiting, and diarrhea, they intentionally minimized those risks by failing to disclose the severe, persistent, and debilitating nature of those symptoms, and they concealed and omitted all mention of serious adverse events that Defendants knew or should have known to be associated with dulaglutide, including gastroparesis and persistent delayed gastric emptying. These omissions created a deceptive net impression intended to induce consumers to request, and to continue using, Trulicity.

c. Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical conferences, "leave behind" brochures, medical-information websites, and other physician-directed marketing that the gastrointestinal adverse events associated with Trulicity were transient, manageable, and mostly mild to moderate, and that nausea "may occur for up to three days following administration." See Master Complaint ¶¶ 575-576, 602-603. Defendants trained their sales representatives, through a "Trulicity Playbook," to answer physician concerns about "projectile vomiting" by citing the low incidence of that event among clinical trial participants, while omitting that clinical trial participants were offered anti-emetic medications that reduced the incidence of vomiting, id. ¶¶ 741, 744, and distributed Trulicity brochures to physicians touting "sustained weight loss at 52 weeks," id. ¶ 755. These representations were false and misleading because Defendants concealed that these side effects were often severe, debilitating, and persistent, that Trulicity could cause gastroparesis, and that Defendants' clinical trial data was skewed by the undisclosed use of anti-emetic medications.

9. Plaintiff Barbara A. Budnack is a resident of Holland, Erie County, New York, and has been a resident of New York at all times relevant to this action. Plaintiff has type 2 diabetes mellitus. On or about July 28, 2017, her primary care physician, Thomas Dilamarter, M.D., of Orchard Park, New York, prescribed Trulicity (dulaglutide) 0.75 mg once weekly, and Plaintiff filled her first Trulicity prescription at Holland Pharmacy in Holland, New York, on or about July 28, 2017. Plaintiff used Trulicity continuously thereafter, filling her prescriptions at Holland Pharmacy and at a Walmart Pharmacy in New York. Her dose was increased to 1.5 mg once weekly and, beginning in August 2022, to 3 mg once weekly at the direction of her endocrinologist, Amy Wnek, M.D., of Southgate Medical Group in West Seneca, New York. In early 2023, while taking Trulicity 3 mg weekly, Plaintiff developed abdominal pain that did not respond to linaclotide (Linzess) and omeprazole. On March 28, 2023, Plaintiff presented to the emergency department at Mercy Hospital of Buffalo after ten days without a bowel movement, with abdominal distention and pressure, and with nausea and multiple episodes of vomiting per day; abdominal imaging showed a nonobstructive bowel gas pattern with a large stool burden, and she was discharged with an antiemetic and a bowel regimen. Plaintiff's symptoms persisted, and an attempted colonoscopy could be only partially completed. On May 10, 2023, Plaintiff reported to her endocrinologist continued constipation, nausea, and vomiting, severe abdominal bloating, and unintended weight loss, and she vomited during the office visit; her endocrinologist directed her to hold Trulicity to see whether her gastrointestinal symptoms would improve. Plaintiff's physicians thereafter continued her on Trulicity 3 mg weekly, which she filled through at least December 27, 2023, and her gastrointestinal symptoms persisted, requiring gastroenterology care and treatment with antiemetic and constipation medications. On January 24, 2024, a nuclear medicine gastric emptying study (solid-meal scintigraphy), ordered to evaluate Plaintiff's early satiety, nausea, and vomiting, confirmed delayed gastric emptying, with 97% of the meal retained at one hour (normal 37-90%), 81% retained at two hours (normal 30-60%), and 26% retained at four hours (normal 0-10%). At no time before or during Plaintiff's use of Trulicity did Defendants disclose to Plaintiff or her prescribing physicians that Trulicity could cause gastroparesis or persistent delayed gastric emptying.

10. Upon information and belief, Plaintiff's prescribing physicians justifiably relied on Defendants' misrepresentations to the medical community, including the false representations that the gastrointestinal side effects of Trulicity were transient, manageable, and mostly mild to moderate, and the omission of any warning concerning gastroparesis from the Trulicity labeling and physician-directed marketing. In parallel, upon information and belief, Plaintiff justifiably relied on Defendants' labeling and widespread direct-to-consumer advertising for Trulicity, which represented that Trulicity was a safe and effective diabetes medication that could also help users lose weight, with only minor and temporary side effects. Relying on this false and misleading net impression, Plaintiff's physicians were induced to prescribe Trulicity, to increase its dose, and to continue it after the onset of Plaintiff's gastrointestinal symptoms, and Plaintiff was induced to take it.

11. Had Defendants disclosed the true risk of gastroparesis and persistent delayed gastric emptying, the inadequacy of their safety testing, and the true, qualified nature of the weight-loss benefits, Plaintiff would not have used Trulicity, or would have stopped using it at the first onset of persistent gastrointestinal symptoms, and/or Plaintiff's prescribing physicians would not have prescribed it, increased its dose, or continued it.

12. As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for future medical treatment and other damages, including those set forth in paragraphs 16 to 18 of the Short Form Complaint.

13. As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and consequent economic and other losses, including pain and suffering, loss of a normal life, medical expenses, lost income and disability, and is entitled to recover compensatory, exemplary, and/or punitive damages.

14. This action is timely. Plaintiff's claims accrued, at the earliest, upon discovery of her gastroparesis, which was first diagnosed by a gastric emptying study on January 24, 2024, and this action is commenced within three years of that date. See N.Y. C.P.L.R. 214-c(2). In addition, Defendants are estopped from relying on any statute of limitations defense by reason of their active and fraudulent concealment of the risks of their GLP-1 RA Products, including Trulicity. See Master Complaint ¶¶ 604-605.

**ATTACHMENT "B"**
**NEW YORK CONSUMER PROTECTION SUPPLEMENT (COUNT X)**

1. Plaintiff incorporates by reference the factual allegations in the Master Complaint and its paragraphs 850-865 as though set forth fully at length herein, together with paragraphs 138-142 (regulatory history of Trulicity), 252-418 (Defendants' marketing and promotion, including paragraphs 358, 378, and 390 concerning Trulicity), 419-603 (Defendants' failure to warn and deceptive marketing, including paragraphs 455, 461, 575-576, and 602-603), and 741-755.

2. Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3. Plaintiff brings this claim under the statutes, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (collectively, the "Statutes").

4. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350. Advertising, including labeling, is false if it is misleading in a material respect, taking into account the extent to which the advertising fails to reveal facts material in light of the representations made. N.Y. Gen. Bus. Law § 350-a(1). Any person injured by a violation of either statute may bring an action to recover actual damages. N.Y. Gen. Bus. Law §§ 349(h), 350-e(3).

5. Plaintiff and Defendants are "persons" under the Statutes.

6. Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

7. Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statutes for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

8. Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

9. Defendants marketed and advertised the GLP-1 RA Products, including Trulicity, to consumers, physicians, and other healthcare entities in New York. In addition, Defendants sold the GLP-1 RA Products to residents of New York; shipped GLP-1 RA Products to New York;

and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in New York. Defendants' misconduct described herein significantly affected New York consumers.

10. As alleged in the Master Complaint, Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statutes by, among other things:

    a. Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

    b. Excessively advertising, marketing and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label, including promoting Trulicity for weight loss although it has never been approved for that use; and

    c. Failing to disclose that they performed research and testing in a manner that would lead to under-reporting of the severe risks of using the GLP-1 RA Products.

11. As described in the Master Complaint, including in the paragraphs cited in paragraph 856 of the Master Complaint as well as paragraphs 447 through 576 of the Master Complaint, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

12. As described in the Master Complaint, including in paragraphs 577 through 601 of the Master Complaint, at all relevant times, Defendants knew or should have known that their GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as, or more than, the weight they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

13. The information referenced above that Defendants misrepresented, concealed and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

14. Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians and other health care providers, including Plaintiff and Plaintiff's health

care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

15. Defendants violated the Statutes by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

16. Defendants violated the Statutes by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

17. Upon information and belief, Plaintiff was exposed to and relied upon Defendants' Trulicity labeling, including the patient information accompanying her Trulicity pens, and Defendants' widespread, national direct-to-consumer advertising campaign for Trulicity, including television commercials such as the "Do More," "On His Game," "Father-Son," and "My Sister" advertisements, which were broadcast in New York during the period Plaintiff was using Trulicity. In these materials, Defendants promoted Trulicity as a safe and effective once-weekly diabetes medication that could also help users lose weight, while presenting its gastrointestinal side effects as common and manageable and omitting any disclosure that Trulicity could cause gastroparesis or persistent delayed gastric emptying. See Master Complaint ¶¶ 358, 378, 455, 461.

18. Plaintiff Barbara A. Budnack is a resident of Holland, Erie County, New York, and has been a resident of New York at all times relevant to this action. Plaintiff has type 2 diabetes mellitus. On or about July 28, 2017, her primary care physician, Thomas Dilamarter, M.D., of Orchard Park, New York, prescribed Trulicity (dulaglutide) 0.75 mg once weekly, and Plaintiff filled her first Trulicity prescription at Holland Pharmacy in Holland, New York, on or about July 28, 2017. Plaintiff used Trulicity continuously thereafter, filling her prescriptions at Holland Pharmacy and at a Walmart Pharmacy in New York. Her dose was increased to 1.5 mg once weekly and, beginning in August 2022, to 3 mg once weekly at the direction of her endocrinologist, Amy Wnek, M.D., of Southgate Medical Group in West Seneca, New York. In early 2023, while taking Trulicity 3 mg weekly, Plaintiff developed abdominal pain that did not respond to linaclotide (Linzess) and omeprazole. On March 28, 2023, Plaintiff presented to the emergency department at Mercy Hospital of Buffalo after ten days without a bowel movement, with abdominal distention and pressure, and with nausea and multiple episodes of vomiting per day; abdominal imaging showed a nonobstructive bowel gas pattern with a large stool burden, and she was discharged with an antiemetic and a bowel regimen. Plaintiff's symptoms persisted, and an attempted colonoscopy could be only partially completed. On May 10, 2023, Plaintiff reported to her endocrinologist continued constipation, nausea, and vomiting, severe abdominal bloating, and unintended weight loss, and she vomited during the office visit; her endocrinologist directed her to hold Trulicity to see whether her gastrointestinal

symptoms would improve. Plaintiff's physicians thereafter continued her on Trulicity 3 mg weekly, which she filled through at least December 27, 2023, and her gastrointestinal symptoms persisted, requiring gastroenterology care and treatment with antiemetic and constipation medications. On January 24, 2024, a nuclear medicine gastric emptying study (solid-meal scintigraphy), ordered to evaluate Plaintiff's early satiety, nausea, and vomiting, confirmed delayed gastric emptying, with 97% of the meal retained at one hour (normal 37-90%), 81% retained at two hours (normal 30-60%), and 26% retained at four hours (normal 0-10%). At no time before or during Plaintiff's use of Trulicity did Defendants disclose to Plaintiff or her prescribing physicians that Trulicity could cause gastroparesis or persistent delayed gastric emptying. Plaintiff purchased and used Trulicity in New York, and Defendants' deceptive acts and practices and false advertising described herein reached Plaintiff and her prescribing physicians in New York. Had Defendants disclosed the true risk of gastroparesis associated with Trulicity, and the true and limited nature of its weight-loss benefits, Plaintiff would not have purchased or continued to use Trulicity.

19. Defendants knew that the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

20. In violation of the Statutes, through a pervasive pattern of false and misleading statements and omissions to health care providers and consumers, Defendants engaged in unlawful intentional conduct by overstating benefits of GLP-1 RA Products and omitting or downplaying side effects and complications of the products.

21. Defendants' acts and practices described herein were consumer-oriented. They were directed to the consuming public at large through national direct-to-consumer television, internet, and social media advertising, product labeling, and websites, and they had a broad impact on consumers at large, including consumers in New York. Defendants' advertising and labeling of Trulicity was misleading in a material respect, including by failing to reveal facts material in light of the representations made, within the meaning of N.Y. Gen. Bus. Law § 350-a(1).

22. In violation of the Statutes, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of goods, merchandise and/or consumer merchandise (i.e., the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

23. Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

24. Plaintiff justifiably relied on Defendants' misrepresentations and omissions and if Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

25. As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants' misrepresentations and omissions. Defendants expected or should have expected reasonable consumers to rely on these misrepresentations and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

26. Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 RA Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by her health care providers.

27. The actions and omissions of Defendants are uncured or incurable.

28. As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

29. As a direct and proximate result of Defendants' misconduct described herein, Plaintiff has suffered serious injuries, economic and non-economic losses, and other damages, all of which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

30. Accordingly, pursuant to the Statutes, including N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3), Plaintiff seeks to recover actual, statutory, treble, and/or punitive damages, costs of suit, and attorneys' fees, and equitable relief as appropriate, and all such other relief as the Court deems proper.

31. No pre-suit notice is required under the Statutes for Plaintiff's claims.